-1-

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**LISA S.**

                                    **Plaintiff,**                         **21-CV-01248-HKS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                                    **Defendant.**

_____

**<u>DECISION AND ORDER</u>**

As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings

in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #11.

**BACKGROUND**

On June 21, 2019, plaintiff Lisa Marie Smith, at the age of 42, protectively

applied for disability insurance benefits ("DIB") and supplemental security income ("SSI")

benefits with the Social Security Administration ("SSA"). Dkt. #6, pp. 210-221.[1] Plaintiff

alleged she was disabled due to physical and mental impairments, including fibromyalgia,

depression, and anxiety, with an onset date of December 22, 2017. Dkt. #6, p. 233.

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

-2-

Plaintiff has a high school diploma and past work experience as a restaurant hostess, office manager, and office receptionist. Dkt. #6, pp. 233-34.

The SSA denied plaintiff's claims initially on September 23, 2019, and on reconsideration on April 27, 2020. Dkt. #5, pp. 103-04, 135-36.

On December 22, 2020, plaintiff appeared with counsel at an administrative hearing by telephone before Administrative Law Judge ("ALJ") Paul Georger. Dkt. #6, pp. 46-76. Plaintiff testified that she cannot stand for long periods due to back pain, and she has been diagnosed with fibromyalgia and neuropathy. Dkt. #6, p. 56. She also testified that she has pain throughout her body which worsens with activity. Dkt. #6, pp. 57-58. She has been prescribed medical marijuana and Gabapentin for the pain, which she supplements with Naproxen. Dkt. #6, p. 58, 60.

Plaintiff estimated that she can sit for approximately ten minutes, stand for less than five minutes, cannot walk "very far at all," and "can't even walk my dog." Dkt. #6, p. 59. She testified that she attends physical therapy; does not use a back brace, walker, or cane; and no doctor has recommended surgery for her back. Dkt. #6, p. 59-62.

Plaintiff further testified that she has been diagnosed with anxiety, has daily panic attacks, and has difficulty relating to other people and maintaining concentration. Dkt. #6, pp. 64-65. Approximately every two months, plaintiff sees a counselor, who prescribes her Rexulti, Sertraline, and Wellbutrin. Dkt. #6, pp. 62-63.

-3-

Plaintiff testified that she showers infrequently due to a fear of falling, and her son does her laundry. Dkt. #6, p. 66. She stated that she cannot shop for "too long" due to her back pain and has no hobbies or activities that she enjoys. Dkt. #6, pp. 66-67.

The ALJ also heard testimony from Josiah Pearson, a vocational expert ("VE"). The ALJ asked the VE to assume a person "limited to light work with occasional use of ramps and stairs, occasional use of ladders, ropes and scaffolds, occasional balancing, stooping, kneeling, crouching and crawling, no exposure to unprotected heights or moving mechanical parts, [and] no operation of a motor vehicle." Dkt. #6, p. 72. The ALJ further asked the VE to assume this person "would be limited to simple, routine, repetitive tasks, [and] simple work related decisions with occasional interaction with supervisors, coworkers and the general public." Dkt. #6, p. 72.

The ALJ then asked the VE if, given those restrictions, plaintiff could perform her past work. Dkt. #6, p. 72. The VE opined that she could not. Dkt. #6, p. 72. The ALJ then asked the VE whether, given those restrictions, there were jobs in the national economy that plaintiff could perform. Dkt. #6, p. 72. The VE testified that there were "unskilled, light occupations" that plaintiff could perform, including routing clerk, marker, and small products assembler. Dkt. #6, pp. 72-73.

On March 30, 2021, the ALJ issued an unfavorable decision, Dkt. #6, pp. 24-45, and on October 7, 2021, the Appeals Council denied plaintiff's request for

-4-

review. Dkt. #6, pp. 6-11. The ALJ's decision thus became the final decision of the Commissioner, and plaintiff filed this action seeking judicial review on November 30, 2021. Dkt. #1.


## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).


To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging

-5-

in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 22, 2017; (2) plaintiff's fibromyalgia, cervical myelopathy, generalized anxiety disorder, post-traumatic stress disorder ("PTSD"), and major depressive disorder constitute severe impairments; plaintiff also has the non-severe impairments of acute sinusitis, gastroesophageal reflux diseases, epigastric pain, abdominal distension, hypertension, and seizure disorder secondary to alcohol withdrawal; (3) plaintiff's impairments did not meet or equal any listed impairment; (4)

-6-

plaintiff retained the RFC to perform light work[2] except for occasional use of ramps and stairs, occasional use of ladders, ropes and scaffolds, occasional balancing, stooping, kneeling, crouching and crawling, no exposure to unprotected heights or moving mechanical parts, and no operation of a motor vehicle; (5) plaintiff is unable to perform her past relevant work of being a receptionist, hostess, or cashier checker; and (6) plaintiff is capable of working as a routing clerk, marker, and small products assembler, and is not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp.29-40.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y.  2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

-7-

support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

**<u>Plaintiff's Alcohol-Related Impairments</u>**

-8-

Plaintiff first argues that the ALJ failed to evaluate the severity of plaintiff's alcohol encephalopathy, alcohol-induced polyneuropathy, and dementia at step two of the sequential evaluation, and that he then failed to consider these impairments in formulating the RFC. Dkt. #7-1, pp. 12-14.

The Commissioner argues that the ALJ did consider these impairments at step two, but any error at that step is harmless where the ALJ considers the effects of all plaintiff's impairments at subsequent steps. Dkt. #9-1, pp. 8-10.

In his decision, the ALJ stated at the conclusion of the step-two analysis: "Finally, the claimant has been diagnosed with seizures secondary to alcohol withdrawal (3F/4, 21F/18). As this condition has been stable without treatment, the claimant's seizure disorder is found to be non-severe." Dkt. #6, p. 30.

This statement addresses the seizures caused by plaintiff's alcohol withdrawal but does not reference her other alcohol-related impairments. However, the exhibits cited by the ALJ in support of this determination—plaintiff's treatment records from ten evaluations at Trinity Medical WNY between November 29, 2018 and September 24, 2020—are replete with discussions of plaintiff's chronic alcoholism and related medical conditions, including seizures, polyneuropathy, and encephalopathy. Dkt. #6, pp. 360-395, 625-667.

-9-

In particular, the records of a visit on September 24, 2020—approximately three months before the administrative hearing in this matter—note plaintiff's "alcohol use disorder *in remission* with polyneuropathy and elevated liver function tests, seizure disorder" and that plaintiff continued on medications for "her alcohol use disorder and denies drinking any alcohol." Dkt. #6, pp. 634-35 (emphasis added).

The ALJ's citation to these records thus suggests that he considered them in assessing generally the effects of plaintiff's alcohol-related impairments, including seizures, and finding them to be non-severe because plaintiff's alcoholism was in remission and responding to treatment.

Assuming, however, that the ALJ erred at step two in not addressing each alcohol-related impairment individually, any such error was harmless "because the ALJ clearly considered the effects of the impairment[s] in the remainder of his analysis." *Brenda D. v. Comm'r of Soc. Sec.*, 6:19-CV-6830, 2021 WL 1856905, at *4 (W.D.N.Y. May 10, 2021) (citing *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013)).

For example, at step three, the ALJ addressed plaintiff's memory, finding her to be only moderately limited in understanding, remembering or applying information. Dkt. #6, p. 31. The ALJ also acknowledged plaintiff's diagnosis of "alcohol dependence in remission," concluding that even if such impairment caused some functional limitations, it would not warrant limitations more restrictive than those determined by the ALJ. Dkt. #6, p.32. In support of this finding, the ALJ cited medical and psychological records noting

-10-

that plaintiff's alcohol abuse was in remission and that she was compliant with alcohol-related counseling and medications. Dkt. #6, pp. 447-51, 625-67.

Next, in determining plaintiff's RFC, the ALJ specifically noted plaintiff's diagnoses of proximal alcoholic encephalopathy, alcohol-induced polyneuropathy, and dementia. Dkt. #6, p. 33. He cited medical records reflecting that plaintiff began a regimen of alcoholism medications in October 2019 and, over the next year, she attended monthly medication-assisted treatment follow-ups and "consistently reported doing well and denied medical complaints or concerns." Dkt. #6, p. 35. He further noted, however, that plaintiff's history of alcohol-related seizures "prevents any exposure to hazards or the operation of a motor vehicle." Dkt. #6, p. 36.

Plaintiff's contention that the ALJ failed to consider plaintiff's alcohol encephalopathy, alcohol-induced poly neuropathy, and dementia after step two in his sequential evaluation is thus without merit.

### Plaintiff's Subjective Complaints

Plaintiff next argues that the ALJ, in determining plaintiff's RFC, improperly discounted her subjective complaints of pain and limitations and relied on the lack of objective findings, which is improper in the context of fibromyalgia. Dkt. #7-1, pp. 14-17.

The Commissioner argues that the ALJ's RFC determination is supported by substantial evidence because he properly relied on the entire record in determining

-11-

that plaintiff's subjective assessment of her limitations was not consistent with the evidence. Dkt. #9-1, pp. 10-17.

In determining plaintiff's physical RFC, the ALJ first noted that plaintiff "has a history of fibromyalgia that has been managed with medication." Dkt. #6, p. 33. He then extensively reviewed plaintiff's medical records from 2018 to 2020, detailing her diagnoses and her medical providers' assessments of her physical condition, gait, posture, strength, and complaints of pain. Dkt. #6, pp. 33-35.

Having reviewed that evidence, the ALJ determined that plaintiff's "statements about the intensity, persistence and limiting effects of her conditions are not consistent with the record." Dkt. #6, p. 35. For example, while plaintiff testified at the hearing that she could not walk her dog and was extremely limited in sitting, walking, standing, and lifting, the Function Report she completed and signed on July 25, 2019, described her daily activities as "Take the dog for a walk, go to several doctors appts, sleep, shower, cook dinner." Dkt. #6, p. 282. She also reported that she could do light housework and laundry, as well as shop for groceries one to two times a week for an hour or two each time. Dkt. #6, pp. 284-85.

The ALJ further noted that plaintiff's medical records generally indicated normal gait and intact motor strength. Dkt. #6, p. 35. He also found persuasive the prior administrative medical findings of state agency medical consultants I. Seok, M.D. and Gary Ehlert, M.D., both of whom opined that plaintiff was "capable of light exertional work

and occasional postural activities, as long as she avoids all exposure to hazards." Dkt. #6, p. 36. These doctors noted that plaintiff had been prescribed gabapentin for her fibromyalgia pain. Dkt. #6, pp. 85, 98, 115. The ALJ found that these findings were consistent with plaintiff's consultative physical examination and medical records. Dkt. #6, p. 36.

Finally, the ALJ found persuasive the opinion of consultative physical examiner Gilbert Jenouri, M.D., who examined plaintiff in August 2019. Dkt. #6, p. 37. Dr. Jenouri opined that plaintiff "has mild restrictions to walking and standing long periods, bending, climbing stairs, lifting and carrying and is also restricted from driving and operating heavy machinery and working at high altitudes." Dkt. #6, pp. 37, 452-57.

Thus, plaintiff's assertion that the ALJ based his RFC solely on the lack of objective evidence confirming her subjective complaints of pain is incorrect. Rather, as noted above, the ALJ considered not only plaintiff's medical records, but her own report of her daily activities and the opinions of three doctors which the ALJ found to be supported by, and consistent with, the evidentiary record.

The Court thus finds the RFC to be supported by substantial evidence. *See Melissa P. v. Comm'r of Soc. Sec.*, 5:20-CV-1007, 2022 WL 669325, at *8 (N.D.N.Y. Mar. 7, 2022) (finding weight that ALJ assigned to doctor's opinion regarding plaintiff's limitations due to fibromyalgia supported by substantial evidence; ALJ based his finding not solely on lack of medical records supporting plaintiff's claims of pain, but evidence of

-13-

plaintiff's daily activities and chiropractic treatment); *Patrick F. G. v. Comm'r of Soc. Sec.*, 1:20-CV-0537, 2021 WL 3421446, at *6 (W.D.N.Y. Aug. 5, 2021) (ALJ properly considered plaintiff's activities of daily living in determining his RFC and evaluating his subjective statements about his pain and limitations).

### **The Mental RFC**

Plaintiff's final argument is that the ALJ improperly determined plaintiff's mental RFC based on his lay interpretation of raw medical data. Dkt. #7-1, pp. 17-22.

The Commissioner argues that the ALJ properly assessed plaintiff's mental RFC based on the medical evidence, her daily activities, and opinion evidence, and that the ALJ ultimately made an RFC assessment that was more restrictive than those advanced by the medical opinions. Dkt. #9-1, pp. 17-24.

In formulating the RFC, the ALJ first reviewed plaintiff's treatment records regarding her mental functioning. Dkt. #6, p. 35. He noted that plaintiff had been diagnosed with depressive disorder, anxiety disorder, and PTSD, and that she had been prescribed medications to treat these disorders. Dkt. #6, p. 35. He further noted that, during various examinations, plaintiff was anxious but cooperative; she displayed intact memory; her intellectual functioning appeared to be average; her insight and judgment appeared good; and she was able to engage in a range of independent daily activities. Dkt. #6, p. 35.

-14-

The ALJ then considered the opinions of three psychological consultants: state agency psychological consultants L. Hoffman and K. Lieber-Diaz and consultative medical examiner Christine Ransom, Ph.D.  Dkt. #6, pp. 36-37. *See Marie R. v. Comm'r of Soc. Sec.*, No. 6:21-CV-775 (CFH), 2022 WL 2180989, at *12 (N.D.N.Y. June 14, 2022) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.") (citation and internal quotations omitted).

The ALJ found the opinions of both Hoffman and Lieber-Diaz to be "somewhat persuasive" because they were supported by plaintiff's consultative medical examination. Dkt. #6, pp. 36-37. However, the ALJ concluded that Hoffman's opinion that plaintiff could engage in routine interactions was not restrictive enough given plaintiff's anxiety disorder and "fair judgment and insight" assessed during treatment. Dkt. #6, p. 36. He therefore stated that the RFC should include the additional "limitations to simple decisions and occasional social interaction." Dkt. #6, p. 36.

As to Lieber-Diaz, the ALJ similarly concluded that her proposed mental functional limitations were in one respect too restrictive—adaptive functioning— and not restrictive enough in another—social interaction. Dkt. #6, pp. 36-37. The ALJ therefore adjusted plaintiff's mental RFC accordingly.

-15-

Finally, the ALJ found the opinion of Ransom, who examined plaintiff in August 2019, to be "unpersuasive." Dkt. #6, p. 37. Ransom opined that plaintiff "showed no evidence of mental limitations," which the ALJ found to be "inconsistent with other evidence of claimant's impaired memory, anxious mood and somewhat limited digit span." Dkt. #6, p. 37.

Synthesizing this evidence, the ALJ determined plaintiff's mental RFC as: "The claimant is limited to simple, routine and repetitive tasks, simple work-related decisions with occasional interaction with supervisors, coworkers and the general public." Dkt. #6, p. 33.

The ALJ's formulation of plaintiff's RFC clearly conforms to applicable Second Circuit authority that the RFC need not perfectly correspond to any particular medical opinion and that the ALJ is to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted). Furthermore, "genuine conflicts in the medical evidence are for the Commissioner to resolve." *Voght v. Saul*, 18-CV-1435-MJR, 2020 WL 3410837, at *2 (W.D.N.Y. June 19, 2020) (citation and internal quotations omitted).

The ALJ was "free to choose between properly submitted medical opinions," and the fact an "ALJ makes an RFC assessment that is more restrictive than the medical opinions of record . . . is generally not a basis for remand." *Catalfamo v. Berryhill*, 17-CV-

-16-

0496, 2019 WL 1128838, at *2 (W.D.N.Y. Mar. 12, 2019) (citations and internal quotations omitted).

Finally, plaintiff's assertion that there was an "evidentiary gap" because the ALJ did not accept all medical opinions is without merit, and her argument for remand on this basis is misplaced. *Angela J. v. Comm'r of Soc. Sec.*, CASE # 19-cv-00272, 2021 WL 2715801, at *5 (W.D.N.Y. July 1, 2021) ("The argument of an evidentiary gap created by according only some weight to the assessments in the administrative record is also unavailing. As stated previously, the ALJ has the responsibility to determine a claimant's RFC, based on all of the relevant medical and other evidence in the record. . . . To require an ALJ to mirror a medical opinion would conflict with an ALJ's duties.") (citations omitted).

In sum, plaintiff "may disagree with the ALJ's conclusion; however, the Court must defer to the Commissioner's resolution of conflicting evidence and reject the ALJ's findings only if a reasonable factfinder would have to conclude otherwise." *Brenda D. v. Comm'r of Soc. Sec.*, 6:19-CV-6830 (WBC), 2021 WL 1856905, at *6 (W.D.N.Y. May 10, 2021) (citation and internal quotation omitted). Such is not the case here.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #7) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #9) is granted.

The Clerk of Court is directed to close this case.

-17-

**SO ORDERED.**

DATED:        Buffalo, New York

              November 27, 2023

                                             s/ H. Kenneth Schroeder, Jr.
                                            **H. KENNETH SCHROEDER, JR.**
                                            **United States Magistrate Judge**